QUESTION: Is the Palm Beach County Shrine Club eligible for a club liquor license, and, if so, would this change its status as a nonprofit organization?
SUMMARY: The Palm Beach County Shrine Club is eligible for a club liquor license, and, if granted, said license would not, in and of itself, destroy the club's status as a nonprofit organization. Use of such license would affect the ad valorem tax exempt status, if any, of the club's property and could affect the club's status as a nonprofit corporation if the sale of alcoholic beverages is such that the club becomes a profit-making venture. It is my opinion that the Palm Beach County Shrine Club is eligible for a club liquor license as provided in ss. 565.02(4) and 561.20(7), F.S. The effect a liquor license has upon the club's status as a nonprofit organization is discussed below. According to the above statutes, to be eligible for a club liquor license, the Palm Beach County Shrine Club must be a chartered or incorporated club organized for lawful purposes and not for the purpose of evading license taxes on dealers in alcoholic beverages. Section565.02(4), F.S., further requires that the club shall have been in "continuous active existence and operation" not less than two years in the county where it exists unless the applicant club is a veterans' or fraternal organization of national scope, in which case it need not fulfill the two-year existence requirement. If the Palm Beach County Shrine Club satisfies the above requirements and pays an annual state club license tax of four hundred dollars, then such club is authorized to serve alcoholic beverages to club members and their nonresident guests. Obtaining the club license and subsequent service and distribution of alcoholic beverages to members and guests would not, in and of itself, in my opinion, destroy the Shrine Club's status as a nonprofit organization. Activities prohibited to be conducted by a nonprofit organization are enumerated in s. 617.0105, F.S., none of which is the service or distribution of alcoholic beverages. However, if the sales of alcoholic beverages are such that the club is deemed to be operating for a profit, then pursuant to s. 617.61(1), F.S., the club's charter as a nonprofit organization may be revoked. Consideration must be given to the effect of such sales upon the exempt status of the club's property if said property has been found to be exempt by the tax assessor from ad valorem taxation under Art. VII, s. 3(a), State Const., and s. 196.012, F.S. Article VII, s. 3(a), State Const., provides "[s]uch portions of property as are used predominantly for educational, literary, scientific, religious or charitable purposes may be exempted by general law from taxation." (Emphasis supplied.) Section196.012(1), F.S., defines exempt use of property as "predominant or exclusive use of property for educational, literary,
scientific, religious, charitable, or governmental use." (Emphasis supplied.) Further definitions of the above terms and criteria for establishing whether or not use of property qualifies for the exemption are provided in Ch. 196, F.S. See ss. 196.021, 196.192,196.195, and 196.196. Under the above statutory provision[s], ownership and utilization of the property are the criteria to be used in determining its exemption from taxation. Ownership of the property by a charitable institution is not sufficient by itself; there must also be a utilization of the property for a charitable purpose. However, it is well recognized that the character of the use to which the property is put is the predominant and more important criteria of the two. Lummus v. Florida Adirondack School, Fla. 1934, 168 So. 232; Gautier v. Biscayne Shores Imp. Corp., Fla. 1953, 68 So.2d 386; AGO 058-279. This is quite proper because it is the property itself which is granted the tax exemption and not the corporate entity which owns it. Attorney General Opinion 074-75. Thus, the tax assessor must look to the use of the new property (the clubhouse addition) to see if the criteria for tax exempt status provided in the Florida Constitution and Statutes have been satisfied. I do not believe the tax assessor will find that property used for the service or sale of alcoholic beverages to club members and guests satisfies the requisite criteria of exempt uses of property found in the constitution and statutes. Section 196.192(2), F.S., provides that "[a]ll property used predominantly for exempt purposes shall be exempted from ad valorem taxation to the extent of the ratio that such predominant use bears to the nonexempt use." Thus, to the extent that a club, previously found to be tax exempt, utilizes its property for the nonexempt purpose of sales of alcoholic beverages, then said property shall be deemed to be nonexempt to the extent of said use. As a caveat, s. 196.012(1), (2), and (3), F.S., requires that if property is used 50 percent or more for nonexempt purposes, then its exemption is entirely lost. Also, s. 196.196(3), F.S., provides that "property claimed as exempt for literary, scientific, or charitable purposes which is used for profit-making purposes shall be subject to ad valorem taxation." Thus, if the sales of alcoholic beverages are for profit-making purposes, then the ad valorem tax exemption would be entirely lost.