QUESTION: Is there any constitutional prohibition against legislation creating a hardship exemption from ad valorem taxation based on income, wealth, and relative property tax burden?
SUMMARY: Until judicially determined otherwise, legislation creating a hardship exemption from ad valorem taxation, based on income, wealth, and relative property tax burden, would be invalid in violation of ss. 3 and 4, Art. VII, and ss. 2 and 9, Art. I, State Const. Until judicially determined otherwise by the courts, it is the opinion of this office that such legislation would be barred by the provisions of the Florida Constitution, more specifically ss. 3 and 4, Art. VII, and quite likely ss. 2 and 9, Art. I. The question posed requires a balancing of the Legislature's power to define and the limitations, express and implied, found in the Florida Constitution. It is well settled that the Florida Constitution is a limitation of power and not a grant of power. State ex rel. Moodie v. Bryan, 39 So. 929; Savage v. Bd. of Public Instruction of Hillsborough County, 133 So. 341; Gaulden v. Kirk, 47 So.2d 567. Under this concept, the test of state legislative power is constitutional restriction; the Legislature may do what the state organic law does not forbid, so long as it does not infringe upon a power granted to the federal government. State ex rel. Cunningham v. Davis, 166 So. 289, reh. den. 166 So. 574; City of Jacksonville v. Bowden, 64 So. 769; Neisel v. Moran, 85 So. 346; State ex rel. Moodie v. Bryan, supra. Such restrictions need not be expressed but may be implied, and such restrictions are just as much a part of the organic law as the expressed restrictions. State ex rel. Nuveen v. Greer, 102 So. 739. It is, of course, the duty of the courts, if the same can be done consistent with the protection of constitutional rights, to resolve all doubts as to the constitutionality, sustaining it, if it can be done as a whole, or if that cannot be done, then sustaining it in part. State ex rel. Moodie v. Bryan, supra. The Legislature's power to define or classify has been considered by the courts on numerous occasions. In Ammerman v. Markham,222 So.2d 423, the Florida Supreme Court upheld a statute which granted homestead exemptions to cooperative and condominium apartments prior to the effective date of the new constitution, which expressly authorized same. The court's reasoning was expressed at p. 426 as follows: The framers of the Fla. Const. of 1885 had no concept of the condominium ownership of property. The Legislature modified the frozen common law concept of real property ownership and, in 1963, enacted a Condominium Act defining a condominium parcel as "a separate parcel of real property, the ownership of which may be in fee simple, or any other estate in real property recognized by law." See Fla.Stat., s. 711.04(1), F.S.A. Moreover, the Legislature had recognized the owners of condominium parcels and cooperative apartments as freeholders. Fla.Stat., s. 97.021(7), F.S.A. This legislative approval of individual ownership of units in a multiple-dwelling structure bears a reasonable relationship to the purposes of Art.X, s. 7, Fla. Const.1885. Ch. 67-339 is a valid legislative definition of "real property" and "dwelling house," as used in the Constitution, so as to extend homestead tax exemption benefits to owners of condominium and cooperative apartments beginning January 1, 1969. (Emphasis supplied.) In Jasper v. Mease Manor, Inc.,208 So.2d 821, the Supreme Court considered a statute defining the word "charitable" as used in the Florida Constitution 1885, s. 1, Art. IX. In a 4-3 decision the statute was upheld. The statute, s. 192.06(11), F. S. 1965, provided ad valorem tax exemptions for bona fide homes for the aged meeting the criteria found in the statute. The court stated at p. 825: The statute thus construed clearly constitutes a legislative definition of "charitable" to include operation of a home under the stated conditions for persons who are chronologically aged without regard to dependence or independence otherwise. This, we now conclude, is within the legislative prerogative. (Emphasis supplied.) It stated the test to be applied as follows at p. 825: The test for measuring such legislation against the constitutional restraints must be that of reasonable relationship between the specifically described exemption and one of the purposes which the Constitution requires to be served. . . . (Emphasis supplied.) Thus the statute was upheld, the essence of the holding being that tax exemption for a nonprofit corporation operating a bona fide home for the aged was tax exemption for a charitable purpose within the constitutional purview. The most recent case dealing with the legislative power to define is the case of Williams v. Jones, 326 So.2d 425. In that case the court upheld a legislative definition of real property to include private leaseholds in publicly owned land, holding that the Legislature clearly had the power to classify property so that all property devoted to private use is treated on a parity and in such a manner that there is an equitable distribution of tax burden and pointing out that the courts for many years had recognized a valid lease as an interest in real property. The exemption provisions of s. 3, Art. VII, State Const., include no express authority for any hardship exemption of the type proposed. Subsection (a) of this section authorizes exemption of "[s]uch portions of property as are used predominantly for educational, literary, scientific, religious, or charitable purposes." All statutes providing for tax exemptions, other than those relating to property owned by public bodies and personal or homestead property, must come within the ambit of this constitutional provision. Holbein v. Hall, 189 So.2d 797. If the Legislature has the power either to expand the list of permissible purposes for exemption or to define these purposes by appropriate legislation, the proposed exemption will be valid. These two possibilities will be discussed in turn. Florida courts have applied the maxim of construction expressio unius est exclusio alterius to limit the power of the Legislature to alter the tax provisions in the Constitution. In Palethorpe v. Thomson, 171 So.2d 526, the court held unconstitutional a statute exempting house trailers used for housing, reasoning that the Legislature could not exempt any class of real or personal property which the Constitution itself made no provision for exempting. In Franks v. Davis, 145 So.2d 228, the maxim was applied to strike a statute granting special tax treatment to stock in trade. Cf. Interlachen Lakes Estates, Inc. v. Snyder, 304 So.2d 433, in which a list of exceptions to the "just valuation" requirement was held to preclude additional exceptions, and Sparkman v. State ex rel. Scott, 58 So.2d 431, striking a statute prescribing conditions for the homestead exemption beyond those specified in the Constitution. A majority of American jurisdictions having considered the issue recognize express or implied constitutional limitations on the legislative power to exempt. See Annot., 61 A.L.R.2d 1038 (1958). Cf. In re Advisory Opinion of the Governor Civil Rights, 306 So.2d 520, 523, in which legislation reinstating the civil rights of convicted felons was held barred by the constitutional power of the Governor to restore civil rights in s. 8(a), Art. IV, State Const. Thus it is unlikely that the Legislature can expand the number of permissible purposes for exemption. It follows, then, that the proposed hardship exemption must be justified under one of the categories in which exemptions are already permitted under s. 3(a), Art. VII, State Const. Specifically, the measure must qualify as exempting property predominantly used for a "charitable purpose" within the meaning of the Constitution. Here conflicting principles operate. The courts have always construed the constitutional exemption provisions strictly against the taxpayer. See Palethorpe v. Thomson, supra; State ex rel. Miller v. Doss,2 So.2d 303. Nevertheless, the courts have also presumed legislative acts to be constitutional. Faircloth v. Mr. Boston Distiller Corp., 245 So.2d 240. In Presbyterian Homes v. Wood,297 So.2d 556, the Supreme Court struck a statute which granted an exemption to homes for the aged, which exemption was conditioned upon the homes' use of an income test for admissions. That condition, the court stated, is too narrow to conform to the constitutional provision requiring no more than a predominantly charitable use. Thus it appears that the Legislature is bound to an extent by the ordinary definition of "charitable purpose" and cannot require an exempted party to be super-charitable or to meet irrelevant criteria. Words of the Constitution are interpreted in their most usual and obvious meaning, unless the text suggests that they may have been used in a technical sense. City of Jacksonville v. Continental Can Co., 151 So. 488; Gaulden v. Kirk, supra, at p. 574. Reading Jasper and Presbyterian Homes together, it can be said that the Legislature cannot restrict the ordinary definition of "charitable" nor expand it beyond what is reasonably related to the ordinary definition of the word. My reading of the authorities suggests that there is not a sufficient nexus between the ordinary definition and the proposed exemption measure to support the exemption. One major difficulty is that the right to any charitable exemption turns on the use of the property as well as its ownership. State ex rel. Miller v. Doss, 2 So.2d 303; AGO 071-247. The proposed exemption appears to focus exclusively upon the attributes and financial status of the owner rather than the use to which the property is put. Most compelling, however, is the fact that "charitable purpose" does not seem to embrace most uses of property owned by private persons. One widely accepted definition of "charity" is as follows: . . . a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government. [15 Am. Jur.2d Charities s. 3, p. 8] Florida accepted this definition in Porter v. Baynard,28 So.2d 890, in which the court sought to distinguish charitable from private trusts for purposes of the Rule against Perpetuities. While recognizing that the definition of "charitable" may change over time, the court held the essence of the term was a benefit to the general public or an indefinite number of persons, as opposed to specified individuals. Porter, supra, at 894-895. Also see Miami Battlecreek v. Lummus, 192 So. 211. Florida courts have also recognized that ventures undertaken for individual profit generally cannot be classed as charitable. See Simpson v. Jones Business College, 118 So.2d 779, Orange County v. Orlando Osteopathic Hospital, 66 So.2d 285, both cited with approval in Presbyterian Homes v. Wood, supra, at 558. Accordingly, it would be my view that a legislative enactment establishing a tax exemption based on income, wealth, and property tax burden would not be permissible under s. 3, Art. VII, supra. By the same rationale and reasoning, s. 4, Art. VII, State Const., would also be violated. Said provision requires that all property be assessed at just value unless immune or exempted by law from taxation. Thus, if not validly immune or exempted, all property must be taxed at its just value, with the exception of those classes of property specifically mentioned in s. 4, Art. VII. The legislation embraced in your request contemplates classifying property on the basis of hardship which is in turn based on wealth, income, and property tax burden. Such property would then be exempted in whole or in part, or perhaps by some stated percentage of just value. Since s. 4, Art. VII, State Const., expressly limits the classes of property which can be classified and taxed by a different standard than just value, such as a percentage of just value, any legislation which classified property and purported to tax it on such a different standard or percentage of just value would violate this provision and the prohibitions found therein. Even if there is authority to create a hardship exemption under s. 3, Art. VII, State Const., any such exemption may still be challenged as arbitrary or discriminatory. Restrictions on the legislative power to classify are found in the Equal Protection Clause of the14th Amendment to the United States Constitution, and in the equality before law and due process provisions of the Florida Constitution. See ss. 2 and 9, Art. I, State Const. The legislation proposed would classify property according to the financial status of the owner. The courts have been willing to uphold state tax classifications under the 14th Amendment as long as they are reasonable and not arbitrary. See, e.g., Allied Stores of Ohio v. Bowers, 358 U.S. 522; Kahn v. Shevin, 273 So.2d 72, aff'd,416 U.S. 351. The Kahn case involved a Florida tax provision exempting the property of widows up to $500; although the classification there was based on sex, the case contains helpful authority for tax classifications based on financial status. The Florida court pointed out that "the object of the legislation here in question is `to reduce to a limited extent the tax burden on widows who own property to the value of $500 and . . . thereby to reduce the disparity between the economic . . . capabilities of a man and a woman.'" Kahn, supra, at 73. The particular provision was upheld as having a "fair and substantial relation" to this objective. This language was quoted with approval by the United States Supreme Court in its affirmance. Kahn, supra. The legislation considered in Kahn had its basis in a provision of the Florida Constitution, specifically authorizing and requiring the exemption. Section 3(b), Art. VII, State Const. The legislation proposed here has no such constitutional backing. In Just Valuation Taxation League v. Simpson, 209 So.2d 229, the court upheld the constitutionally authorized classification of property as tangible or intangible and the favorable tax treatment of the latter category. The court pointed out that classifications authorized in the Florida Constitution need meet only the reasonableness requirements of the 14th Amendment, not those of s. 12, Art. I, State Const. 1885 (presently s. 9, Art. I, State Const.). Just Valuation Taxation League v. Simpson, supra, at 230. In summary, the requirements of the Florida Constitution limit the power of the Legislature to create exemptions on its own initiative. Returning to the proposed hardship exemption, it would be inappropriate for me to express a categorical or definite conclusion as to the reasonableness of its classifications, because I do not have before me the specific provisions proposed and because there is no judicial authority in this jurisdiction dealing directly with this issue. Recent cases suggest, however, that the classifications you are considering would be held invalid. In Presbyterian Homes v. Wood, supra, at 559, the court stated that "an `income test' as the criterion for tax exemption of homes for the aged raises serious questions of equal protection." The statute considered in that case classified institutions according to who received the benefit of their charitable activities. Unlike the proposed measure, it did not classify taxpayers directly according to financial status to determine entitlement to an exemption. However, an expansive reading of that language, apparently dicta in the case, would support the invalidation of the proposed exemption. In Interlachen Lakes Estates v. Snyder, supra, it was pointed out that a statute classifying property for ad valorem tax purposes based on the ownership thereof might well have been found to be invalid under the 1885 Constitution. The court stated that the statute discriminates between subdividers who had sold 60 percent of their lots and those who hadn't, and between sellers and purchasers of the lots. Here two property owners of identical property could be treated differently taxwise, based on differences in income and wealth. The potential for abuse is readily apparent, and a thoughtful or devious individual could eliminate or reduce his ad valorem property tax burden simply by working less or earning less income, while his identically situated gainfully employed and industrious neighbor would be required to shoulder part of his neighbor's burden for the financial obligations of the taxing unit. This would be exactly opposite the function of the statutes before the Supreme Court in the Williams case and, instead of achieving an equitable distribution of tax burden, would promote an inequitable distribution of tax burden resulting in part from one person's willingness to work and another person's unwillingness to work. I conclude, therefore, that while the matter is not free from doubt, the proposed legislation would likely offend ss. 2 and 9, Art. I, Florida's equal protection and due process constitutional provisions.