# FLORIDA ROCK INDUSTRIES, INC. v BYSTROM, etc.

## Case No. 83-37728 (CA25)

Eleventh Judicial Circuit, Dade County

May 9, 1985

### APPEARANCES OF COUNSEL

**John G. Fletcher** for plaintiff.

**Robert A. Ginsburg,** Dade County Attorney, and **Daniel A. Weiss,** Assistant County Attorney, for defendants.

### OPINION OF THE COURT

PHILLIP W. KNIGHT, Circuit Judge.

THIS CAUSE came before the Court for nonjury trial on April 16, 1985. The Court heard testimony, received documentary evidence and considered the parties' pleadings and memoranda of law. Being fully advised in the premises, the Court makes the following:

## FINDINGS OF FACT

1. This action was brought by the Plaintiff-taxpayer Florida Rock Industries, Inc. to contest the 1982 real property tax assessment of some 1,560 acres of undeveloped wetlands with frontage along Krome Avenue, situated in unincorporated Dade County west of the Dade-Broward levee, between the Tamiami Trail and Northwest 106th Street. The property is identified by tax roll folio numbers 30-3919-00-10, 30-3929-00-0040 and 30-3931-00-0010.

2. The Defendant Property Appraiser assessed the subject land at $4,089,950 as of January 1, 1982. This was its "just value" or fair market value on the assessment date. The tax assessment was prepared by Robert M. Perez, supervisor of the Real Estate Division of the Property Appraiser's Office.

3. The Property Appraiser determined the fair market value of the subject property by performing a standard appraisal using the comparable sales approach to valuation. In so doing, the Property Appraiser considered and gave adequate weight to all the factors set forth in Section 193.011, Florida Statutes. Market data used in assessing the property consisted primarily of sales of substantial tracts of vacant land in the vicinity of the subject property and included the transfer of as much as 1,280 acres. The comparable sales occurred between 1979 and 1982. The comparable sale properties considered by the Court are all in close proximity to the subject property and are within the area described in paragraph 1 above. All of the comparable sales are subject to the same federal regulations which restrict the present use of the subject property. The comparable sales used by the Property Appraiser in preparing the subject assessment are highly comparable to the subject property with regard to highest and best use and present use, size and location. Some of the comparable sale properties actually abut the subject property.

4. The Property Appraiser's determination of the "just (fair market) value" of the subject property was amply supported by the expert testimony of Stephen M. Cantwell, MAI. Mr. Cantwell conducted an independent appraisal, thoroughly examining and investigating the present market demand for and sales of undeveloped land in the immediate area of the subject property. Mr. Cantwell's testimony was extremely believable, and the Court accepts his testimony and opinions verbatim. Based on overwhelming evidence of present market demand, Mr. Cantwell estimated the fair market value of the subject property as of January 1, 1982 at $4,750,000.

5. The Plaintiff-taxpayer objected to the 1982 assessment of the

28

subject property, contending that the Property Appraiser failed to consider the jurisdiction of the Corps of Engineers over the subject property, or failed to give adequate weight to such governmental regulation. The Court is of the opinion and here finds that the Property Appraiser, through Mr. Perez, was keenly aware of and thoroughly considered the limitations on the present use of the subject property resulting from the jurisdiction of the United States Army Corps of Engineers. By considering sales of neighboring parcels subject to the same jurisdiction as the subject property, appropriate weight was given by the Property Appraiser to the land use restrictions applicable to the subject property, as well as to all other criteria set out in Section 193.011, Florida Statutes.

6. The Court expressly rejects and finds not credible the testimony of the Plaintiff's expert Mr. Eugene Davidson. Mr. Davidson contended that the sales used by the Property Appraiser could not be considered comparable sales. Mr. Davidson arrived at this conclusion initially not by the time-honored appraisal practice of verification, but by inferring that the buyers of properties comparable to the subject could not have been knowledgeable of governmental regulation in the area. The Court finds that the buyers of the comparable sale properties, who in the aggregate invested millions of dollars in cash in acquiring those properties, were informed regarding governmental regulations restricting the present use of their recently purchased property and acted with knowledge of such restrictions in consummating the transactions in question. The Court's findings in this regard are predicated primarily on testimony by Mr. Cantwell and Mr. Perez concerning verification of sales. The comparable sales used by the Property Appraiser and Mr. Cantwell were thus shown to fit the "willing buyer—willing seller" paradigm.

7. Whether or not the buyers who have purchased land in the immediate vicinity of the subject property were speculators, the Court finds that the Property Appraiser did not speculate or engage in conjecture by using the comparable sales of similar property in arriving at his estimate of the fair market value of the subject property. The Court finds that as of January 1, 1982 there was a presently existing viable market demand for the subject property as evidenced by comparable sales. It appears evident to the Court that some day, sales prices of property in the area may well exceed current prices by a million dollars per section.

8. Paul Larsen, the taxpayer's own witness, testified that Dade County has annually issued permits allowing the Plaintiff to rockmine the subject property, and that based on an economic approach to

valuation the value of the subject property for rockmining could range up to $40,000 per acre, or $62,400,000 for the entire tract. It is apparent that in assessing the subject property at a mere fraction of that value the Property Appraiser did not assess the subject property on the basis of its value as rockmining land, but considered only the value of the subject property as of the January 1, 1982 assessment date as indicated by comparable sales. Through the use of the comparable sales approach, however, the prospective value of the property was considered by the Property Appraiser only to the extent it entered into, and was reflected by, the present market value of the property on the assessment date, as indicated by sales consummated between 1979 and 1982. The Court finds that the sales considered and used by the Property Appraiser were bona fide arm's-length transactions, and were not "purely speculative, as evidenced by the terms of sale". The Property Appraiser was therefore not required by the Department of Revenue's Standard Measures of Value to discard such sales as worthless.

## CONCLUSIONS OF LAW

9. The issue presented by the instant case is whether the Property Appraiser may assess property at fair market value based upon comparable sales of raw land in the area of the subject property where development of the property in the immediate future is virtually precluded and the present use of the property is severely restricted by governmental regulations. This very question has recently been answered in the affirmative by the Second District Court of Appeal. In *Roden v. GAC Liquidating Trust*, 462 So.2d 92 (Fla. 2d DCA 1985), the court considered the assessment of some 10,140 acres of undeveloped, unplatted wetlands. There were no utilities, dedicated roadways or other improvements serving the property. Applicable land use regulations prohibit development of more than ten percent (10%) of such wetlands areas and prohibit the issuance of a building permit for property not on a public road.

The court concluded that the best indicators of value of the property were the comparable sales in proximity to the subject. The comparable sales were properly considered by the Polk County Property Appraiser in light of Section 193.011, Florida Statutes, and the assessment was upheld. This Court is likewise persuaded that the Dade County Property Appraiser in the instant case proceeded properly in accordance with Section 193.011 and that the assessment of the subject property should be upheld for the reasons set forth in this judgment.

10. Section 193.011, Florida Statutes, prescribes eight criteria which

the Property Appraiser must consider in arriving at fair market value. A Property Appraiser may assign to each statutory criteria such weight as he deems proper. *Straughn v. Tuck*, 354 So.2d 368 (Fla. 1977). The Court finds and concludes that by considering and giving adequate weight to all eight criteria, the Dade County Property Appraiser complied with the constitutional and statutory mandates of his office in assessing the subject property, including Section 193.011(2), regarding highest and best use and present use. "The guidelines set forth in Section 193.011, Florida Statutes, are of use especially to Property Appraisers where there is a lack of, or where there is inadequate market evidence. (This market evidence could be sales or income data.) Where there are sales, however, of comparable properties, the Appraiser must perform a standard appraisal using normal techniques. By doing this, he necessarily considers all, and uses some, of the factors set forth in Section 193.011, Florida Statutes." *Bystrom v. Valencia Center, Inc.*, 432 So.2d 108, 110 (Fla. 3d DCA 1983), *rev. den.*, 444 So.2d 418 (Fla. 1984).

11. Property Appraisers may properly consider prospective value to the extent it enters into and is thereby reflected in present value. In the instant case, the Property Appraiser properly considered this present value, which was amply evidenced by recent transactions in an active real estate market. These transactions conclusively demonstrated a present market demand for the subject property as of the January 1, 1982 taxing date. *See City of Tampa v. Colgan*, 121 Fla. 218, 163 So. 577 (1935); *Williams v. Simpson*, 209 So.2d 262 (Fla. 1st DCA), *cert. denied*, 212 So 2d 629 (Fla. 1968), 72 Am. Jur.2d, State and Local Taxation Section 763.

12. Article VII, Section 4 of the Florida Constitution prescribes that all property in the state shall be assessed at "just value" for ad valorem tax purposes. "Just value" is synonymous with fair market value. *St. Joe Paper Co. v. Brown*, 223 So.2d 311 (Fla. 1969); *Walter v. Schuler*, 176 So.2d 81 (Fla. 1965). Only agricultural land or land used exclusively for non-commercial recreational purposes may be classified by general law and assessed solely on the basis of character or use. Article VII, Section 4(a), Florida Constitution.

13. The Plaintiff-taxpayer failed to allege or show that the subject property qualifies under Chapter 193, Part II, Florida Statutes, for assessment solely on the basis of character or use. Since the subject property is not specially classified land, the State Constitution requires the property to be assessed at fair market value and precludes it from being assessed solely on the basis of character or use. Neither the Property Appraiser nor this Court is free to deviate from this Constitu-

31

tional standard or to reject the compelling evidence that the property has present value as demonstrated by the active market of comparable land sales abutting or otherwise in close proximity to the subject property.

14. It was the taxpayer's burden to prove that the contested tax assessment is unsupported by any reasonable hypothesis of a legal assessment, and not simply to show that the taxpayer's appraisal is preferable to the assessment. *Blake v. Xerox Corporation*, 447 So.2d 1348 (Fla. 1984). The Plaintiff-taxpayer herein did not prove that the assessment by the Property Appraiser was inconsistent with any reasonable hypothesis of a legal assessment. Moreover, the taxpayer adduced no substantial competent evidence to support a reduction in assessment. Accordingly, it is

ORDERED AND ADJUDGED that:

1. The 1982 assessment of the subject property described in paragraphs 1 and 2 above is hereby confirmed and ratified in all respects.

2. Plaintiff's Complaint and the cause are hereby dismissed with prejudice.

3. Defendants do hereby have judgment in their favor and against the Plaintiff and the Plaintiff shall go hence without day.

4. The Court reserves jurisdiction to tax costs against the Plaintiff upon due notice.

*ORDER ON PLAINTIFF'S PETITION FOR REHEARING OR ALTERATION AND AMENDMENT OF FINAL JUDGMENT*

The above styled cause came on to be heard on Plaintiff's Petition for Rehearing or Alteration and Amendment of Final Judgment and the Court wishing to clarify its Final Judgment it is

ORDERED as follows:

1. The Final Judgment is amended to reflect that the purchasers of land in the immediate vicinity of the subject property were speculative investors (i.e., those who were buyers in the comparable sales used by the Property Appraiser and his expert witness). Those buying property for some future use were speculating on some future governmental approvals for use of their land.

2. The Final Judgment is amended to reflect that although Dade County had granted its permission to rockmine the subject property, the ultimate authority, the U.S. Army Corps of Engineers, denied the right to rockmine the property for which application was made.

3. The only immedate use to which the property could be put would

32

be for recreational purposes such as hunting or fishing. The evidence reflects, however, that the property's value for recreational use does not support the assessment. No evidence was adduced that the sales were for recreational purposes.

4. The Petition in all other respects is denied.