**In re ST. PETERSBURG HAR-BOURVIEW HOTEL COR-PORATION, Debtor.**

**ST. PETERSBURG HARBOURVIEW HOTEL CORPORATION, Plaintiff,**

**v.**

**O. Sanford JASPER, Pinellas County Tax Collector, J.T. Herndon, as Executive Director Florida Dept. of Revenue, Jim Smith, Property Appraiser Pinellas County, Defendants.**

**Bankruptcy No. 94–2014–8P1. Adv. No. 94–209.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Dec. 22, 1994.

Charles M. Tatelbaum, Clearwater, FL, for debtor/plaintiff.

B. Norris Rickey, Clearwater, FL, for defendants Jim Smith and L.H. Fuchs.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS is a confirmed Chapter 11 case and the matter before the Court is a complaint filed by St. Petersburg Harbourview Hotel Corporation (Debtor) against O. Sanford Jasper, Pinellas County Tax Collector, J.T. Herndon and Jim Smith (Plaintiffs). The Complaint was originally filed in the Circuit Court for Pinellas County, and was removed to this Court by Notice of Removal filed March 30, 1994. The Complaint contests the 1991, 1992 and 1993 ad valorem tax assessments on the sole asset of this Debtor, real property located in St. Petersburg, FL. In due course, the matter was scheduled for final evidentiary hearing and the facts relevant to resolution of this controversy, as established at the evidentiary hearing are as follows:

The Debtor is the owner of a tract of land located in St. Petersburg, Florida. The land is improved with a high rise building, in which the Debtor operates the St. Petersburg Hilton Hotel. In 1992, the property was assessed for purposes of ad valorem taxes at $13,829,700.00. The property assessor arrived at this assessment by using the cost approach in determining the value of the property. In 1993, the property was again assessed for purposes of ad valorem taxes. In 1993, the property was assessed at $11,-262,100.00. Again, the assessor utilized the cost approach in determining the value for the property.

Based upon the foregoing, the Debtor contends that the use of the cost approach in determining the value of this property is inappropriate, and does not result in an accurate determination of real value for this property. The Debtor seeks a determination by this Court of an accurate value of the property utilizing the income approach, which according to the Debtor is a more appropriate approach for the determination of value of an income-producing property.

In its case in chief, the Debtor presented experts who testified that the most appropriate manner in which to value income producing property is the income approach. According to the Debtor's expert, this is so because it is the single most important consideration of a potential buyer of income producing property. In utilizing the income approach, the Debtor's expert considered the historical data of the hotel's performance and developed a forecast of expenses and rate of occupancy. From these forecasts, the Debtor's expert then prepared a discounted cash flow analysis, arriving at a discount rate of 15%. Based upon these numbers, the Debtor's expert arrived at a going concern value for the property, based upon the income approach of $7.7 million. From this number then, the Debtor's expert deducted the value of the fixtures, furnishings and equipment, because this property is pledged as collateral to creditor other than the mortgage holder on the hotel. After providing for the replacement costs of the fixtures, furnishings and equipment, the Debtor's expert concluded that the reconciled value for the Hilton property for 1991 is $3,000,000.00 and for 1992 and 1993, $3,050,000.00.

In comparison, the county's property appraiser testified that he calculated the value of this property using each of the three methods, i.e. cost, market and income, and then chose the most applicable approach for determining the value of the property. Under the cost approach, the County assigned a per square foot value for the land of $11.49 and a per square foot value for replacement of the structure of $47.09. For 1992, the County utilized the identical number for the replacement of the structure, and a slightly larger per square foot value for the land of $11.59. For 1993, the County assigned a structure value of $62.02 and a land value of $16.32 per square foot. The County provided little justification for the small or no increase for 1992 and the large increase in the number for 1993.

Utilizing the income approach, the County did not use actual numbers, although those numbers were available. Rather, the County projected occupancy, average daily rate and vacancy rate in arriving at income figures. For the 1992 appraisal, the County utilized actual expense figures and adjusted them downward. Finally, the County attempted to

utilize the market approach, however virtually no comparables were available for comparison. For 1991, the County gave most weight to the cost approach. Based upon this approach, the county determined that the value of the property $13,964,000.00.

For the 1992 and 1993 assessments, the county's appraiser placed the most weight upon the market approach in determining value for the property, notwithstanding the lack of comparables available. The only comparable found by the County in utilizing the market approach is the Deerfield Beach Hilton. This comparable is located 200 miles away from the subject property, on the East Coast of Florida. The Deerfield Hilton was constructed in 1985, compared to the 1971 construction date of the subject property. In addition, the subject property contains 333 guestrooms; the Deerfield Hilton contains 100 less guestrooms. Notwithstanding, the County considered the $8,000,000.00 selling price of the Deerfield Hilton in 1993 as a reliable and accurate determination of value for the St. Pete Hilton. Based upon this approach, the County appraised the subject property at $12,987,000.00 for 1992 and $11,262,000.00 for 1993.

█ Based upon the foregoing, the Debtor contends that the appraisal by the County does not accurately reflect the value of the property for the years in question, and in fact, the values exceed the market value for the property. In opposition, the County contends that the values are just values as required by the Florida Statutes and these values must stand as correct.

█ Florida Statute 193.011 governs the appraisal of real property and requires that the property appraiser consider eight factors in arriving at a just value. These factors are:

(1) present cash value of property

(2) highest and best use of property

(3) location

(4) quantity or size

(5) cost and present replacement value of improvements

(6) condition

(7) income

(8) net proceeds of sale

The appraiser's assessment is considered presumptively valid, provided that the appraiser considered all the required statutory factors, *Robbins v. Summit Apartments, Ltd.*, 589 So.2d 460 (Fla.3d DCA 1991), and his methods and conclusions are supported by any reasonable hypothesis of a legal assessment, *Bystrom v. Hotelerama Associates, Ltd.*, 511 So.2d 640 (Fla.3d DCA 1987). To rebut the presumption of validity, the taxpayer must show that the subject assessment was made in an arbitrary and discriminatory manner, resulting in a value which exceeds market value, or the taxpayer must show that the assessment is grossly excessive in comparison to fair market value. *Powell v. Kelly*, 223 So.2d 305 (Fla.1989); *Schleman v. Connecticut General Life Insurance Co.*, 9 So.2d 197 (Fla.1942).

In considering the appraisals by the two experts, the following matters are of great importance, all of which weigh against the value established by the County. First, it is conceded by the County's expert that the income approach is a preferred method for arriving at a value for income producing properties. Second, there is no justification for the County appraiser to utilize hypothetical expense and occupancy numbers when actual numbers were available. Thirdly, the limited number of comparable sales in the St. Petersburg area clearly reduces the accuracy of establishing value by this method. Based upon these observations, this Court is constrained to conclude that the appropriate method to determine the value of the subject property is by utilizing the income approach. Inasmuch as the Debtor's appraiser utilized the income approach, using actual and historical numbers for expenses and occupancy, and the County's methodology under the income approach utilized hypothetical numbers, this Court is constrained to place little weight on the expert for the County. In sum, this Court is satisfied that the appraisals done by the County substantially exceed the market value of the subject property and therefore, the proper value for this property for the relevant years are those values set forth by the Debtor's expert. A separate

final judgment shall be entered in accordance with the foregoing.